IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMERICAN FARM BUREAU FEDERATION, AMERICAN PETROLEUM INSTITUTE, AMERICAN ROAD AND TRANSPORTATION BUILDERS ASSOCIATION, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, LEADING BUILDERS OF AMERICA, MATAGORDA COUNTY FARM BUREAU, NATIONAL APARTMENT ASSOCIATION, NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, NATIONAL ASSOCIATION OF REALTORS®, NATIONAL CATTLEMEN'S BEEF ASSOCIATION, NATIONAL CORN GROWERS ASSOCIATION, NATIONAL MINING ASSOCIATION, NATIONAL MULTIFAMILY HOUSING COUNCIL, NATIONAL PORK PRODUCERS COUNCIL, NATIONAL STONE, SAND AND GRAVEL ASSOCIATION, PUBLIC LANDS COUNCIL, TEXAS FARM BUREAU, AND U.S. POULTRY AND EGG ASSOCIATION | § § § § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:23-cv-20 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, in his official capacity as ADMINSTRATOR OF U.S. ENVIRONMENTAL PROTECTION AGENCY; U.S. ARMY CORPS OF ENGINEERS; LIEUTENANT GENERAL SCOTT A. SPELLMON, in his official capacity as CHIEF OF ENGINEERS AND COMMANDING GENERAL, U.S. ARMY CORPS OF ENGINEERS; and MICHAEL L. O'CONNOR, in his official capacity as the ASSISTANT SECRETARY OF THE ARMY (CIVIL WORKS) | § § § § § § § § § § § § | |
| Defendants, | § | |
| BAYOU CITY WATERKEEPER | § | |
| Applicant-Intervenor-Defendant. | § | |

**APPLICANT-INTERVENOR-DEFENDANT'S MOTION TO INTERVENE**

**TABLE OF AUTHORITIES**

**CASES**

*Abita Springs v. U.S. Army Corps of Eng'rs,*
No. CV 15-0451, 2015 WL 13533518 (E.D. La. Sept. 25, 2015) ................................ 20

*Aransas Project v. Shaw¸*
No. C-10-75, 2010 WL 1644645, (S.D. Tex. April 23, 2010) ...................................... 11

*Atchafalaya Basinkeeper v. Bernhardt,*
Civil Action No. 20-651-BAJ-EWD, 2021 WL 4785496 (M.D. La. Oct. 13, 2021) ... 15

*Brumfield v. Dodd,*
749 F.3d 339 (5th Cir. 2014) ........................................................................... passim

*City of Houston v. Am. Traffic Sols., Inc.¸*
668 F.3d 291 (5th Cir. 2012) ...................................................................................... 18

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
788 F.3d 312 (D.C. Cir. 2015) .................................................................................... 18

*Edwards v. City of Houston,*
78 F.3d 983 (5th Cir. 1996) ........................................................................... 10, 11, 18

*Entergy Gulf States Louisiana, L.L.C. v. EPA,*
817 F.3d 198 (5th Cir. 2015) ...................................................................................... 10

*Franciscan Alliance, Inc. v. Azar,*
414 F.Supp.3d 928 (N.D. Tex. 2019) .......................................................................... 11

*Grutter v. Bollinger,*
188 F.3d 394 (6th Cir. 1999) ...................................................................................... 16

*Heaton v. Monogram Credit Card Bank of Ga.,*
297 F.3d 416 (5th Cir. 2002) ...................................................................................... 20

*John Doe No. 1 v. Glickman,*
256 F.3d 371 (5th Cir. 2001) ........................................................................... 20, 22, 25

*Kane Cnty., Utah v. United States,*
928 F.3d 877 (10th Cir. 2019) .................................................................................... 23

*La Union del Pueblo Entero v. Abbott,*
29 F.4th 299 (5th Cir. 2022) ....................................................................................... 13

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne,*
659 F.3d 421 (5th Cir. 2011) ...................................................................................... 14

*Louisiana State v. Dept. of Commerce,*
Civil Action No. 21-1523, 2021 WL 5998519 (E.D. La. Dec. 20, 2021) .................... 15

*Navajo Nation v. Regan,*
563 F.Supp.3d 1164, 1168 (D.N.M. 2021) ................................................................... 5

i

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ........................................................................ 11

*Ouachita Riverkeeper v. EPA*,
No. 3:14-cv-4495-L-BK, 2015 WL 11120995 (N.D. Tex. June 15, 2015) ........... 19, 20

*Pascua Yaqui Tribe v. EPA*,
557 F. Supp.3d 949. 956 (D. Ariz. 2021) ........................................................ 5

*Rapanos v. United States*,
547 U.S. 715 (2006) ....................................................................................... 3

*Sierra Club v. City of San Antonio*,
115 F.3d 311 (5th Cir.1997) .......................................................................... 20

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ................................................................. passim

*Sierra Club v. Glickman*,
82 F.3d 106 (5th Cir. 1996) ..................................................................... 12, 20

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ........................................................................ 10

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
338 F.R.D. 364 (W.D. Tex. 2021) ................................................................... 15

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ............................................................ 9, 12, 18, 22

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ....................................................................................... 18

*United States v. City of New Orleans*,
540 F. App'x 380 (5th Cir. 2013) .................................................................... 25

*United States v. U.S. Steel Corp.*,
548 F.2d 1232 (5th Cir. 1977) ....................................................................... 10

*Utah Ass'n of Cntys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2011) ...................................................................... 23

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverages Comm'n*,
834 F.3d 562 (5th Cir. 2016) ................................................................. passim

**STATUTES**

33 U.S.C. § 1251(a) ........................................................................................ 2

33 U.S.C. § 1344(f) ........................................................................................ 6

33 U.S.C. § 1362(12) ...................................................................................... 2

33 U.S.C. §§ 1251-388 ................................................................................... 3

**RULES**

Fed. R. Civ. P. 24 ........................................................................................ 1

Fed. R. Civ. P. 24(a)(2) ......................................................................... 9, 16

Fed. R. Civ. P. 24(b) ............................................................................ 1, 25

Pursuant to Federal Rule of Civil Procedure 24 and for the reasons set forth below, Applicant-Intervenor-Defendant Bayou City Waterkeeper, Inc. respectfully moves this Court for leave to intervene as defendants in this case.

## NATURE & STAGE OF PROCEEDINGS

Plaintiffs, American Farm Bureau Federation, et al., filed a lawsuit seeking to challenge a rule jointly promulgated by the United States Environmental Protection Agency ("EPA") and the United States Army Corps of Engineers ("Corps") (collectively, the "Federal Agencies") titled "Revised Definition of 'Waters of the United States'," 88 Fed. Reg. 3004 (January 18, 2023) ("2023 Rule" or "Rule"). The Complaint was filed three weeks ago, DKT. 1, and Defendants have not yet filed answers. Bayou City Waterkeeper ("Waterkeeper") seeks to intervene as a defendant in this matter pursuant to Fed. R. Civ. P. 24 ("Rule 24") and attaches its proposed Answer as Exhibit 1.

## SUMMARY OF THE ARGUMENT

The Waterkeeper satisfies all of the requirements for intervention as of right and for permissive intervention. The Waterkeeper is a non-profit membership organization with a longstanding interest in protecting and restoring the integrity of bayous, rivers, streams, and bays and across the Lower Galveston Bay watershed through Clean Water Act advocacy, education, and action. For over two decades, the Waterkeeper has worked with communities affected by water pollution and flooding across Houston and through the Lower Galveston Bay watershed to restore these waters and achieve solutions that are both equitable and rooted in nature. Safeguarding the protections afforded by the Clean Water

Act is integral to this work. The Waterkeeper and its members therefore have substantial, protected interests in the subject matter of this litigation, and these interests would be impaired by a ruling vacating or weakening the Rule. These interests are unique, divergent from, and not adequately represented by the Federal Agencies. Accordingly, the Waterkeeper meets the four-part test for intervention as of right, or, in the alternative, should be allowed permissive intervention to defend the Rule and safeguard the protections afforded to communities and waters under the Clean Water Act.

## LEGAL BACKGROUND

The Clean Water Act (the "Act") is the primary federal law governing water pollution in the United States and defines the scope of waters protected by the same. In 1972, Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The "major purpose" of the Act was "to establish a *comprehensive* long-range policy for the elimination of water pollution." S. Rep. No. 92–414, at 95 (1971), 2 Legislative History of the Water Pollution Control Act Amendments of 1972 (Committee Print compiled for the Senate Committee on Public Works by the Library of Congress), Ser. No. 93–1, p. 1511 (1971) (emphasis added). To that end, the Clean Water Act prohibits "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "navigable waters" has a broad, specialized definition: "the waters of the United States, including the territorial seas." *Id*. at 1362(7).

For almost 40 years, the Federal Agencies' interpretation of the term "waters of the U.S." "remained largely unchanged." 88 Fed. Reg. at 3012. This longstanding regulatory regime was based on the 1986 regulations, as implemented by the Federal Agencies consistent with relevant caselaw, guidance, and expertise. *See* 88 Fed. Reg. at 3011-14. Following the Supreme Court's ruling in *Rapanos v. United States*, 547 U.S. 715 (2006) ("*Rapanos*"), the Federal Agencies issued guidance for determining jurisdiction consistent with the two standards established in the case—Justice Kennedy's significant nexus standard and the plurality's relatively permanent standard. 88 Fed. Reg. at 3014. The *Rapanos* guidance, however, was not legally binding in the same way that rules are. 88 Fed. Reg. at 3014 n.32. In the preambles of the 1986 regulations, both Federal Agencies reserved the right to make jurisdictional determinations about particular waterbodies and whether they fall into a "waters of the U.S." on a case-by-case basis. 88 Fed. Reg. at 3011.

Then, in 2015, the Federal Agencies revised the regulations interpreting "waters of the U.S.," known as the Clean Water Rule ("2015 Rule"). 33 U.S.C. §§ 1251-388; 80 Fed. Reg. at 37073-74. The 2015 Rule adopted standardized definitions for key terms such as "tributary" and "adjacent." 80 Fed. Reg. at 37075-86. The 2015 Rule relied on extensive science showing that waters within these categories have a significant nexus to downstream or adjacent jurisdictional waters. *Id.* at 37065. For those categories defined as "jurisdictional by rule," the 2015 Rule eliminated the need for case-by-case determinations of a significant nexus. *See id.* at 37058.

Following the 2015 Rule, the Federal Agencies made two more major revisions to the regulations. 84 Fed. Reg. 56626 (Oct. 22, 2019), 85 Fed. Reg. 22250 (Apr. 21, 2020). In 2019, the Federal Agencies repealed the Clean Water Rule and reinstated the pre-2015 regulatory regime (i.e., the 1986 regulations, as interpreted consistent with Supreme Court precedent and longstanding practices). In 2020, the Federal Agencies promulgated the "Navigable Waters Protection Rule," ("NWPR") which re-defined "waters of the U.S." ("WOTUS") and eliminated protections for entire categories of waters. The 2020 Rule largely only protected those waterbodies that had a relatively permanent surface water connection to traditionally navigable waters. Though the 2020 Rule was only in place for a short period of time, there was a significant decrease in waters protected under the Clean Water Act. Estimates show that approximately 18% of streams and 51% of wetlands were excluded from Clean Water Act protections, exposing thousands of miles of streams and acres of wetlands. 88 Fed. Reg. at 3064. States did not or could not fill this regulatory void. *Id.* at 3065.

At the direction of Executive Order 13990, signed on January 20, 2021, the Federal Agencies reviewed the 2020 Rule and determined that it was "incompatible with the objective of the Clean Water Act and inconsistent with the text of relevant provisions of the statute, the statute as a whole, relevant case law, and the best available science" 88 Fed. Reg. at 3007, 3055-66. Furthermore, two federal district courts vacated the 2020 Rule, concluding that it suffered from "fundamental, substantive flaws that cannot be cured without revising or replacing the NWPR's definition of 'waters of the United States.'" *See*

*Navajo Nation v. Regan*, 563 F.Supp.3d 1164, 1168 (D.N.M. 2021); *Pascua Yaqui Tribe v. EPA*, 557 F.Supp.3d 949, 956 (D. Ariz. 2021); *see also* 88 Fed. Reg. at 3016. The courts then reinstated the pre-2015 regulatory regime, as would be required post-vacatur.

The EPA and the Corps developed the 2023 Rule to "establish limits that appropriately draw the boundary of waters subject to Federal protection," 88 Fed. Reg. at 3005, and provide clarifications that will improve efficiencies and consistency in jurisdictional determinations, *id*. at 3007. The 2023 Rule is consistent with the text, purpose, and structure of the Clean Water Act. *Id.* at 3019-24. It is grounded in an extensive scientific record, including hundreds of peer-reviewed scientific articles. *Id.* at 3029-33. And it establishes limiting principles consistent with relevant Supreme Court cases and the agencies' experience. *Id.* at 3033-42. Over the course of the rulemaking process, the Federal Agencies engaged State and local governments over a 60-day federalism consultation period, consulted with tribal governments, sought independent advice from the Science Advisory Board, and reviewed approximately 114,000 public comments. *Id.* at 3018-19.

The 2023 Rule establishes limits on the scope of waters protected by the Clean Water Act. In particular, the 2023 Rule adopts two limiting principles for assessing whether tributaries, adjacent wetlands, or other waters qualify as waters of the United States: the "Significant Nexus Standard" and the "Relatively Permanent Standard." When upstream waters have a relatively permanent connection or significantly affect the integrity of waters—the traditional navigable waters, the territorial seas, and interstate waters—the

Rule ensures that those upstream waters fall within the scope of the Clean Water Act. *Id.* at 3005. By contrast, where waters do not have a relatively permanent connection or significantly affect the integrity of downstream jurisdictional waters, the rule leaves regulation to the Tribes and States. *Id.* at 3005, 3126 (providing examples of waters that likely would not be jurisdictional under the significant nexus standard). To assist in these determinations, the Corps provides the public with a process for obtaining a jurisdictional determination free of charge. *Id.* at 3011.

The 2023 Rule also codifies eight exclusions to "waters of the U.S." Among these, are the longstanding exclusions for prior converted cropland and waste treatment systems. *Id.* at 3103.[1] The Rule also includes exclusions for certain ditches, artificially irrigated areas, artificial lakes or ponds, artificial reflecting pools or swimming pools, waterfilled depressions, and swales and erosional features. *Id.*

## APPLICANT-INTERVENOR-DEFENDANT BAYOU CITY WATERKEEPER'S INTERESTS

The Waterkeeper has concrete and particularized interests in this case because of its mission to ensure Clean Water Act protections are upheld in the region.[2] Specifically, the Waterkeeper seeks to ensure that wetlands and other waters are protected due to the services that they provide to communities across the Lower Galveston Bay watershed,

---

[1] In addition, the Clean Water Act exempts activities such the normal farming activities, construction and maintenance of irrigation ditches and the maintenance of drainage ditches. *See* 33 U.S.C. § 1344(f).
[2] The Waterkeeper's specific interests are explained in detail in the attached Declaration of Dr. John Jacob "Jacob Declaration." Attached as Exhibit 2.

which stretches from Lake Livingston and the Katy Prairie south to the Brazos River and out to Galveston Bay and encompasses the entire greater Houston region. Proposed intervenor-defendant Bayou City Waterkeeper—previously Galveston Baykeeper Inc.—is a Texas-based non-profit organization that was established in 2001. As part of its mission, the Waterkeeper protects the waters and people of the greater Houston region by combining bold action, community science, and grassroots policy. The Waterkeeper organizes its work into three program areas: clean water, wetland protection, and just climate transitions. As part of its work, the Waterkeeper works to preserve wetlands and floodplains across the Lower Galveston Bay watershed by relying on the legal protections created by the Clean Water Act.

The Waterkeeper has approximately 2,600 members and supporters residing in and serving Houston and the Lower Galveston Bay watershed. The Waterkeeper's members support the organization's mission to protect the waters and people of the Lower Galveston Bay watershed through law, science, and policy centering communities. Among its many programs focused on Clean Water Act protections is the Wetland Watch Program, an educational program focused on sharing policy, science, and legal expertise with communities to aid in saving valuable waters and the benefits they provide from destruction. Since at least 2015, the Waterkeeper has engaged and educated communities about the definition of "waters of the United States."

Recently, on September 3, 2021, the Waterkeeper submitted recommendations on the current revisions to the WOTUS Rule.[3] And on February 7, 2022, the Waterkeeper submitted comments on the proposed WOTUS Rule.[4] Not only did the Waterkeeper's submissions include detailed recommendations aimed at supporting the mission of its organization and untangling the uncertainty of some previous WOTUS rules, the Waterkeeper also explained the significance of the Rule revisions to the marginalized Texas communities that it supports.

Changes to the definition of "waters of the U.S." will disproportionately affect already marginalized communities along the Texas coast who reside in flood zones and alongside petrochemical industries. Texas wetlands mitigate flood impacts and filter toxins and impurities from water—protecting these coastal and socially vulnerable communities. Members of the Waterkeeper regularly live, work, and recreate in and around waterbodies that may lose Clean Water Act protections, making them vulnerable to pollution, impairment, or destruction, should Plaintiffs prevail in this action. It is vital to the interests of the Waterkeeper that the 2023 Rule lawfully define "waters of the United States" within the breadth required by the Clean Water Act and applicable case law.

On January 18, 2023, the State of Texas filed its action challenging the 2023 Rule, S.D. Texas 3:23-cv-17, DKT. 1, and the same day the American Farm Bureau, et al., filed

---

[3] Federal Rulemaking Docket ID No. EPA-HQ-OW-2021-0328; Waterkeeper's Recommendations ("Recommendations") (Sept. 3, 2021). Attached as Exhibit 3.
[4] Federal Rulemaking Docket ID No. EPA-HQ-OW-2021-0602-0001; Waterkeeper's Comments (Feb. 7, 2022) ("Comments"). Attached as Exhibit 4.

a similar Petition, S.D. Texas 3:23-cv-20. DKT. 1. Both complaints allege that the Federal Agencies exceeded their authority when defining the "waters of the U.S.," making clear Plaintiffs' opposition to the 2023 Rule, including the many provisions supported by the Waterkeeper. The Waterkeeper now asks to intervene to defend those aspects of the Rule that the Waterkeeper has supported for years, and to defend the Clean Water Act's full jurisdiction from improper limitation.

## ARGUMENT

### I.    The Waterkeeper is entitled to intervene as of right.

Rule 24(a) provides that, "[o]n timely motion, the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To determine whether a party has properly moved to intervene, the Fifth Circuit applies a four-part test: "(1) the application . . . must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by existing parties to the suit." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverages Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). Further, Rule 24, "'is to be liberally construed,' with 'doubts resolved in favor of the intervenor.'"

*Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2015) (citation omitted). As shown below, the Waterkeeper satisfies each element of the four-part test.[5]

### A. The Waterkeeper's Motion to Intervene is timely.

The inquiry into timeliness "'is contextual; absolute measures of timelines should be ignored.'" *Wal–Mart,* 834 F.3d at 565 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Moreover, timeliness "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Wal–Mart*, 834 F.3d at 565 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)). To determine timeliness, the Fifth Circuit considers four factors: (1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances. *Espy*, 18 F.3d at 1205 (citing *Stallworth*, 558 F.2d 264-66 (5th Cir. 1977)). These factors, however, are "not a formula for determining timeliness." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). The Waterkeeper's motion is timely.

Factor 1 related to timeliness is satisfied. The Waterkeeper's Motion is timely because less than three weeks have passed since Plaintiffs initiated this lawsuit. The Waterkeeper's motion is also filed before Defendants have submitted their answers and well in advance of the initial conference currently scheduled for April 5, 2023. DKT. 5;

---

[5] The Court granted Conservation Groups' motion to intervene as of right in the State of Texas' prior lawsuit challenging the 2015 WOTUS Rule. *See Texas v. EPA et al.,* No. 3:15-CV-00162, Order granting Motion to Intervene, DKT. 46 (Feb. 2, 2016).

*see also Aransas Project v. Shaw*¸ No. C-10-75, 2010 WL 1644645, at *2 (S.D. Tex. April 23, 2010) (finding motion timely when filed prior to the submission of any answers and before the pretrial conference).

Factors 2-3 related to prejudice and timeliness are also satisfied. The existing parties will not be prejudiced if the Waterkeeper is granted intervention now. Prejudice should be determined "by the delay in seeking intervention, not the inconvenience to the existing parties of allowing an intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206. To date, only one motion has been filed in this case. Consequently, the Waterkeeper's timely intervention will not prejudice the existing parties at this early stage of litigation. In contrast, if the Waterkeeper is denied intervention, its interests will suffer because it cannot defend the 2023 Rule with arguments unique to its position as both an advocate for healthy waterways and a group with membership in affected communities. There are no unusual circumstances requiring an application of Factor 4.

**B. The Waterkeeper has substantial, protected interests in the subject matter of the case.**

Courts have explained that "[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficient and due process." *Wal–Mart*, 834 F.3d at 566 n.2 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Alleging specific harm to members constitutes a "'direct substantial, legally protectable interest.'" *Edwards*, 78 F.3d at 1004 (citations omitted); *see also Franciscan Alliance, Inc. v. Azar*, 414 F.Supp.3d 928, 936-37 (N.D. Tex. 2019) (holding that civil rights advocacy organizations were entitled to intervene in lawsuit

brought by private healthcare providers against the United States Department of Health and Human Services challenging regulation).[6] When interests are concrete, personalized and legally protectable, non-property interests are sufficient to support intervention. *Texas*, 805 F.3d at 658-59.

Here, the Waterkeeper has a substantial, legally protected interest in the scope of the Clean Water Act as clarified in the 2023 Rule. The Waterkeeper advocates for, and has members in, greater Houston and across the Lower Galveston Bay watershed. The 2023 Rule determines which waters and wetlands in these watersheds receive protection under the Clean Water Act. And these Clean Water Act protections are essential to safeguard the Waterkeeper's and its members' access to clean water, natural flood protection, and a myriad of other ecosystem services discussed in the 2023 Rule.

Thus, the Waterkeeper has a "legally protectable interest as the intended beneficiary of a government regulatory system." *Wal-Mart* , 834 F.3d at 569; *accord Texas*, 805 F.3d at 660 (holding undocumented immigrants entitled to intervention as of right because they are "the intended beneficiaries of the challenged federal policy"); *see also Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (holding that parents of children who receive school vouchers under a Louisiana State program had a right of intervention to defend the State program because they and their children were its primary intended beneficiaries); *see also Sierra Club v. Glickman*, 82 F.3d 106, 111 (5th Cir. 1996) (holding that American

---

[6] Case appealed but not resolved on the merits. *Franciscan Alliance, Incorporated v. Becerra*, 843 Fed. Appx. 662, 663 (5th Cir. 2021).

Farm Bureau Federation had right to intervene in Sierra Club's lawsuit because of its potential impact on Bureau members who pump irrigation water from aquifer).

Moreover, the Waterkeeper and its members have at least three unique interests, different from the general public, in defending the 2023 Rule. First, the Waterkeeper has expended significant time and resources to protect the waters covered by the 2023 Rule, as evidenced by its extensive involvement in rulemaking process and longstanding educational and advocacy efforts. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (finding a substantial interest where intervenors "expend significant resources in the recruiting and training of volunteers"). In 2021, the Waterkeeper submitted Recommendations on revisions to the definition of "waters of the U.S."[7] The Waterkeeper subsequently submitted Comments in 2022 on the proposed rule to create a new definition of "waters of the U.S."[8] In these Recommendations and these Comments, the Waterkeeper articulated its specific interests in the 2023 Rule: advocating for underserved communities impacted by flooding and water quality issues; appropriately crafting jurisdictional definitions to protect water quality, wetlands, and communities; basing jurisdictional determinations in the best available science to ensure appropriate jurisdictional assessments; and protecting marginalized communities by guarding communities located in 100-year floodplains.[9]

---

[7] Federal Rulemaking Docket ID No. EPA-HQ-OW-2021-0328; *see* Exhibit 3.
[8] Federal Rulemaking Docket ID No. EPA-HQ-OW-2021-0602-0001; *see* Exhibit 4.
[9] *See generally* Exhibit 3 and 4.

Indeed, since its founding in 2021, the Waterkeeper has advocated for water quality and wetland protections afforded by the Clean Water Act and reaffirmed by science. The Waterkeeper's vision and mission centers on the waters and communities across the Lower Galveston Bay watershed and three important organizational programs: wetland protection, clean water focused on environmental justice, and just climate policies centering equity in water and infrastructure decisions. The Waterkeeper acts as the primary nonprofit across Greater Houston. It is dedicated to upholding protections under the Act, running a community Wetland Watch Program,[10] and leading initiatives to create local government policies on ways wetland mitigation may serve as natural flood protection as part of broader efforts regionally to prevent future disasters. True to this mission, the Waterkeeper continues to work in Houston and Lower Galveston Bay watershed communities most affected by water pollution and flooding to promote resilience and equity and advance nature-based solutions.[11] As a result, the Waterkeeper has a strong interest in ensuring these waters remain protected under the Clean Water Act, as reflected in the 2023 Rule.

Second, the Waterkeeper's members have concrete, personal interests—including recreational, aesthetic, and health interests—in maintaining the Clean Water Act's protections in the lower Galveston Bay watershed, which are affirmed by the Rule. *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (holding that intervenor had a "legally protectable interest" in protecting his right to vote

---

[10] This Program's aim is to ensure that communities in the Lower Galveston Bay watershed know how to report unlawful or unpermitted destruction of wetlands.
[11] Exhibit 4 at 17-18.

in city council elections.); *see also Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 370 (W.D. Tex. 2021) (allowing students and student organizations to intervene based on interest in protecting race-conscious admissions program and continued diversity in educational experience.); *see Atchafalaya Basinkeeper v. Bernhardt*, Civil Action No. 20-651-BAJ-EWD, 2021 WL 4785496, at *2 (M.D. La. Oct. 13, 2021) (finding conservation group had an interest in the "possibility" of being able to hunt black bears). The Waterkeeper's members who live, work, and recreate in the Lower Galveston Bay watershed depend on Clean Water Act protections of waters and wetlands for, among other things, clean drinking water and natural flood protection for roughly 7 million of people. Jacob Declaration at ¶10, ¶34-40. Waterkeeper members also use regional waterbodies for recreation and derive enjoyment from visiting these places. Jacob Declaration at ¶¶41-48. Prairie potholes, a unique type of wetland unique to this region and historically excluded from federal jurisdiction, are particularly critical for the health of the Lower Galveston Bay watershed because they store water and share biological connectivity with "waters of the United States" through the movement of amphibians, aquatic seeds, macroinvertebrates, reptiles, and mammals.[12] *See, e.g., Louisiana State v. Dept. of Commerce*, Civil Action No. 21-1523, 2021 WL 5998519, at *4 (E.D. La. Dec. 20, 2021) (finding intervenor group had a "sufficient protectable interest in the protection of sea

---

[12] The Waterkeeper brought a lawsuit alleging that a prairie pothole is jurisdictional based on the scientifically backed contention that wetlands have unidirectional, hydrological, and biologic exchanges with waters of the U.S. *Galveston Baykeeper, Inc. v. Trendmaker Homes, Inc.,* Case No. 4:14-cv-01500 (S.D. Tex. May 30, 2014).

turtles in furtherance of their personal aesthetic enjoyment, as well as their recreational and research interests").

Third, the significant public interest in the promulgation of the 2023 Rule further cements the Waterkeeper's interest for purposes of intervention. *See Brumfield*, 749 F.3d at 344 ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question."). The 2023 Rule affects the scope of the Clean Water Act's protections nationwide and will affect countless vital waterbodies. The Federal Agencies received over 100,000 public comments on the proposed rule, a fact that further speaks to the public's interest in the Rule. Thus, while the Waterkeeper already has legally protected interests meeting the requirements for intervention, the public's overwhelming interest in the 2023 Rule provides strong additional support for granting the Waterkeeper intervention here.

### C. If successful, Plaintiffs' Action may impair the Waterkeeper's interests.

An applicant for intervention as of right must be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)). Moreover the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield*, 749 F.3d at 345.

The Waterkeeper satisfies this requirement for at least two reasons. First, Plaintiffs seek a nationwide vacatur of the 2023 Rule or, in the alternative, an order declaring the Clean Water Act unconstitutional.[13] Were they to prevail, it would "impair or impede" the Waterkeeper's ability to protect their interests. *See Espy*, 18 F.3d at 1207 (". . . an adverse resolution of the action would impair [the proposed intervenor's] ability to protect [its] interest."); *see also Brumfield*, 749 F.3d at 344 (impairment prong satisfied where case could put intervenors "at risk" of losing school vouchers or their full range of school choices); *id.* at 344-45 (intervenors need not establish that their interests *will* be impaired, but only that the disposition of the action "may" impair or impede their ability to protect their interests). For example, vacating the 2023 Rule would reinstate the pre-2015 regulatory regime that previously led to inconsistent jurisdictional determinations.[14] The Waterkeeper and its members would therefore have to devote more time and resources to case-by-case jurisdictional determinations under the pre-2015 regime, limiting its ability to consistently protect the wetlands and waterways in the Lower Galveston Bay area. Flawed jurisdictional determinations may lead to greater flooding which would directly harm vulnerable communities in flood-prone areas across both Houston and the Lower Galveston Bay watershed. Further, the time and resources spent by the Waterkeeper in advocating for the Final Rule—to secure these benefits for their members—would be wasted if the Rule were vacated. *See City of Houston v. Am. Traffic Sols., Inc.*¸ 668 F.3d

---

[13] DKT. 1 at 27 (23-cv-0020).
[14] Exhibit 3 at 2-6.

291, 294 (5th Cir. 2012) (proposed intervenors spent time and money to secure city charter amendment so they demonstrated a particular interest in defending the same, and, if amendment was overturned, their time and money would "have been spent in vain.").

Second, absent intervention, the Waterkeeper will lose the right to appeal any outcome in this case, thereby jeopardizing the Waterkeeper's ability to fully protect this important watershed where its members live, work, and recreate. *Edwards,* 78 F.3d at 993 ("one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit"). The Waterkeeper thus seeks to intervene in this case to defend its unique interests in Clean Water Act protections related to the region it serves—the Lower Galveston Bay watershed.

### D. The Waterkeeper's interests are not adequately represented by the existing parties.

An applicant for intervention as of right must show that its interests are not adequately represented by an existing party to the litigation. Fed. R. Civ. P. 24(a). "[T]his burden is 'minimal.'" *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). A prospective intervenor "need only show that 'the representation *may* be inadequate.'" *Wal-Mart Stores*, 834 F.3d at 569 (quoting *Texas*, 805 F.3d at 662). Even where a would-be intervenor has the same "ultimate objective" as an existing party, the prospective intervenor can establish that representation may be inadequate by demonstrating that its "interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662; *see Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015)

(cautioning that treating "general alignment" of parties as dispositive is the "wrong legal standard"). And the Fifth Circuit has also found parties' "ultimate objectives to be incongruent" where one party must balance more extensive interests than the proposed intervenor. *Ouachita Riverkeeper v. EPA*, No. 3:14-cv-4495-L-BK, 2015 WL 11120995, at *2 (N.D. Tex. June 15, 2015) (citing *Brumfield*, 749 F.3d at 346).

Here, the Waterkeeper's interests diverge from the Federal Agencies in several ways that could affect this litigation. Foremost is a difference in positions regarding the scope of the Clean Water Act. The Waterkeeper has long advocated for comprehensive Clean Water Act protections, consistent with the law and science. For example, the Waterkeeper pressed for a *per se* rule covering tributaries given their undeniable impact and connection to downstream waters. The Rule, however, rejected that approach and imposed a requirement that tributaries possess a significant nexus or relatively permanent connection to foundational waters. 88 Fed. Reg. at 3033 (cataloguing the "rule's limitations"). Thus, because the Waterkeeper's position is that the Final Rule does not go *far enough* in identifying waters protected under the Clean Water Act, the Waterkeeper's interests may differ from the Agencies in response to the States' claims that the Rule goes *too far* in identifying protected waters. This could manifest itself in this litigation in differing arguments, either procedural or substantive, which is enough to show that representation is inadequate. *Cf. Wal-Mart Stores,* 834 F.3d at 569 (noting differences in scope of legal arguments parties could make); *Brumfield,* 749 F.3d at 346 (same).

Additionally, the Waterkeeper's interests differ in important, practical ways that are relevant to this lawsuit. *See Brumfield*, 749 F.3d at 345-46. In short, the government must represent the "broad public interest," while the Waterkeeper has much more discrete and particularized interests. *Espy,* 18 F.3d at 1208; *see Abita Springs v. U.S. Army Corps of Eng'rs,* No. CV 15-0451, 2015 WL 13533518, at * 3 (E.D. La. Sept. 25, 2015) ("[T]he Fifth Circuit has found that a government defendant does not adequately represent the interest of a private entity, even if they seek the same ultimate outcome." (citing *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002); *John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001); *Sierra Club v. City of San Antonio,* 115 F.3d 311 (5th Cir. 1997); *Espy*, 18 F.3d 1202). "Indeed, a governmental agency's generalized interests are alone sufficient reason to conclude that interests of the agency and private party, although similar, are not necessarily aligned." *Ouachita,* 2015 WL 11120995 at *2 (citing *Glickman*, 82 F.3d at 110).

The Waterkeepers' specific objective in defending the 2023 Rule is to preserve its ability to protect the communities, waterbodies, and wetlands located in a limited geographic area: Houston and the Lower Galveston Bay watershed communities. *See Espy*, 18 F.3d at 1207-08. Specifically, the Waterkeeper has regional concerns, such as the fact that Texas lacks a separate program to regulate the dredge-and-fill of wetlands. The Federal Agencies, on the other hand, will seek to defend the 2023 Rule as a whole, and must represent the broad national public interests in doing so. Moreover, the Federal Agencies may be obligated to consider the full range of industrial, environmental, state, and federal

interests. *See, e.g.*, 88 Fed. Reg. at 3043 (describing how the rule balances the Act's water quality objective with the responsibilities of States "to prevent, reduce and eliminate pollution."). As a result, the Agencies may take different positions than the Waterkeeper on issues related to the 2023 Rule.

The Waterkeeper's comments detail its unique interests in the flood-protection value of wetlands, which may differ from the government's. In both its 2021 Recommendations and 2022 Comments, the Waterkeeper specifically focused on how the changes in the 2023 Rule will impact its members and the communities in the Waterkeeper's service area. For example, from 1980-2008, sixty percent of Houston's Cole Creek wetlands were destroyed, and these wetlands affect the impacts of major weather events affecting Houston like Hurricane Harvey and Katrina.[15] These wetlands lost protection because they were classified as "isolated," and this classification resulted in a loss of Clean Water Act protections.[16] Because wetlands, forests, and prairies "trap and slowly release rain and flood waters" they are vital to protecting Houston communities exposed to the greatest flood risk.[17] Due to the loss of Clean Water Act protections for the Texas gulf landscapes, over 12 billion gallons of wetland water storage capacity has been lost from 1996-2010.[18] These interests uniquely situate the Waterkeeper to defend the 2023

---

[15] Exhibit 3 at 12.
[16] *Id.*
[17] Exhibit 3 at 14-15.
[18] *Id.*

Rule based on how it affects communities in Houston and the Lower Galveston Bay watershed.

Courts have found that similar divergences of interest create the requisite possibility of inadequate representation for purposes of intervention. *See, e.g.*, *Texas*, 805 F.3d at 663 (intervenors had a personal interest in defending an immigration program to obtain its benefits, whereas the federal government's interests included "securing an expansive interpretation of executive authority" and "efficiently enforcing the immigration laws"); *Brumfield*, 749 F.3d at 346 (noting that the state had "many interests" in the case, including maintaining its relationship with the federal government, that were not shared by the would-be intervenors, whose interests were narrower); *John Doe*, 256 F.3d at 381 ("Given the [Animal Protection Institute's] minimal burden and [the U.S. Department of Agriculture's] duty to represent the broad public interest, not just the Institute's, we conclude that USDA's representation of the Institute may be inadequate.").

While the Waterkeeper cannot predict with certainty that the Federal Agencies' different interests will result in inadequate representation, "surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346; *see also Heaton*, 297 F.3d 416 at 425 ("That the [intervenor's] interests and [the defendant's] may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the [intervenor's] burden on this issue."). In short, there is at least "sufficient doubt about the adequacy of representation to warrant intervention." *Trbovich*, 404 U.S. at 538.

Finally, the Federal Agencies do not adequately represent the Waterkeeper's interest in this case, as demonstrated by their decision to oppose intervention. In prior litigation, the Federal Agencies, however, have not opposed intervention by either industry or conservation groups.[19] But here, they oppose the Waterkeeper, demonstrating that they likely do not represent the Waterkeeper's interests. This opposition underscores the inadequacy of representation and further supports the Waterkeeper's right to intervene to defend its interests. *See Kane Cnty., Utah v. United States*, 928 F.3d 877, 895 (10th Cir. 2019) ("[T]he United States opposes Southern Utah Wilderness Alliance's ["SUWA"] intervention motion—further indicating that it may not adequately represent SUWA's interests here."); *cf. Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2011) ("The government has taken no position on the motion to intervene in this case. Its silence on any intent to defend the intervenors' special interests is deafening.") (internal quotations and alterations omitted).

$$* * *$$

The Waterkeeper's concerns specific to the scope of the Clean Water Act and regionally to the greater Houston area and Lower Galveston Bay Watershed show a significant divergence from the government's broad national interest in defending the 2023

---

[19] The Department of Justice did not oppose Industry's intervention in *Pascua Yaqui Tribe et al. v. EPA*, Unopposed Mot. to Intervene, No. 4:20-cv-00266-RM (D. Ariz. Apr. 30, 2021), DKT. 33. Nor did they oppose National Resources Defense Council and National Wildlife Federation's Motion to Intervene in the prior litigation in this Court. Unopposed Mot. to Intervene, *State of Texas et al., v. EPA*, No. 3:15-cv-00162 (S.D. Tex. Feb. 16, 2016), DKT 43.

Rule such that the Waterkeeper should be granted intervention to ensure its interests are adequately represented.

## II.    Alternatively, the Court should allow the Waterkeeper permissive intervention.

If the Court denies intervention as of right, the Waterkeeper requests the Court grant permissive intervention under Federal Rule of Civil Procedure 24(b). Intervention should be granted where "no one would be hurt and the greater justice could be attained." *John Doe¸* 256 F.3d at 375 (citing *Espy*, 18 F.3d at 1205). Permissive intervention should be granted when: (i) a timely request is made, (ii) the intervenor's claim or defense and the main action have a question of law or fact in common, and (iii) granting intervention will not unduly delay or prejudice the original parties in the case. *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013)*; see also* Fed. R. Civ. P. 24(b)).

The Waterkeeper satisfies these three conditions. First, for the reasons set out above this Motion is timely. *See* Section 1A. Second, the Waterkeeper shares a common question of law or fact with the existing action. The Waterkeeper will address many of the same issues regarding the validity of the 2023 Rule, but the Waterkeeper will also present a different perspective based on its unique motivations, interests, and regional concerns. *See* Section 1D. Finally, because the Waterkeeper is making this Motion to Intervene before any answers have been filed or an initial conference has been held—granting this motion will not cause any delay or prejudice the existing parties' rights. *See* Section 1A. Therefore, even if the Court finds that the Waterkeeper is not entitled to intervene as of right, this Court should grant the Waterkeeper's request for permissive intervention.

## CONCLUSION

For these reasons, Bayou City Waterkeeper requests to intervene as a defendant in this litigation as a matter of right, or in the alternative, by permission, to protect its and its members' interests.

Dated: February 9, 2022.

Respectfully submitted,

EARTHJUSTICE

By: /s/ *Jennifer Anne Powis*
          Jennifer Anne Powis
          Texas State Bar No. 24041716
          (*Southern District of Texas Admission renewal forthcoming*)
          *Attorney-in-Charge*

Kristen Schlemmer
Texas State Bar No. 24075029
Southern District No. 2078411
Bayou City Waterkeeper
2010 N. Loop West, Suite 103
Houston, TX 77018
Tel: 512-619-1583
kristen@bayoucitywaterkeeper.org

*Of counsel, Bayou City Waterkeeper*

Caroline Riviere Crow
Texas State Bar No. 24118360
Southern District No. 3686825
845 Texas Ave., Suite 200
Houston, TX 77002
jpowis@earthjustice.org
ccrow@earthjustice.org
Tel: 281-694-5157
Fax: 415-217-2040

Stu Gillespie (*pro hac vice pending*)
633 17th Street, Suite 1600
Denver, CO 80202
sgillespie@earthjustice.org
Tel: 303-996-9616
Fax: 720-550-5757

Adrienne Y. Lee (*pro hac vice pending*)
1001 G St. NW, Suite 1000
Washington, DC 20001
alee@earthjustice.org

Tel: 202-667-4500
Fax: 202-667-2356

*Counsel for Applicant-Intervenor-
Defendant Bayou City Waterkeeper*

**CERTIFICATE OF CONFERENCE**

Pursuant to Southern District of Texas Local Rule 7.1, counsel for Bayou City Waterkeeper conferred with counsel for Plaintiffs and Defendants regarding their position on this Motion to Intervene. At the time of this motion, counsel for Defendants stated that Defendants oppose intervention as of right under Fed. R. Civ. P. 24(a) but do not oppose permissive intervention under Fed. R. Civ. P. 24(b). Plaintiffs' counsel has not been able to confirm the position of each of their clients by the time of this filing, but Plaintiffs would oppose intervention if it alters the scheduling for the preliminary injunction proceedings set by local rules or agreed to by the Plaintiffs and Defendants.

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2023, a copy of this **APPLICANT-INTERVENOR-DEFENDANT'S MOTION TO INTERVENE** was served on the counsel stated below through the CM/ECF E-File System and by e-mail.

J. Amber Ahmed
Assistant Attorney General
State Bar No. 24080756
Southern District No. 3135176
amber.ahmed@oag.texas.gov

Mark A. Steinbach
Assistant Attorney General
State Bar No. 24056653
Southern District No. 2705161
mark.steinbach@oag.texas.gov

Logan Harrell
Assistant Attorney General
State Bar No. 24106054
PRO HAC VICE pending
logan.harrell@oag.texas.gov

OFFICE OF THE ATTORNEY
GENERAL
Environmental Protection
Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

*Counsel for Plaintiffs*

Andrew J. Doyle *(pro hac vice pending)*
U.S. Department of Justice
Environment & Natural Resources
Division
San Francisco Field Office
450 Golden Gate Avenue,
Room 07-6714
San Francisco, CA 94102
Tel: 415-744-6469
Fax: 202-514-8865
andrew.doyle@usdoj.gov

Elliot Warren Higgins *(pro hac vice pending)*
U.S. Department of Justice
Environment & Natural Resources
Division
PO Box 7611
Washington, DC 20044
Tel: 202-598-0240
elliot.higgins@usdoj.gov

Sarah Izfar *(pro hac vice pending)*
U.S. Department of Justice
Environment & Natural Resources
Division
P.O. Box 7611
Washington, DC 20044
Tel: 202-305-0490
sarah.izfar@usdoj.gov

Hubert T. Lee *(pro hac vice pending)*
U.S. Department of Justice
Environment & Natural Resources Division
150 M St. NE Rm 4.1116
Washington, DC 20002
Tel: 202-514-1806
hubert.lee@usdoj.gov


Sonya J. Shea *(pro hac vice pending)*
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Tel: 303-844-7231
sonya.shea@usdoj.gov

*Counsel for Defendants*


                                        */s/ Caroline Crow*